# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

VICKI HANSON ,

        **Plaintiff,**

                                **Case No. 2:16-cv-755**
                                **JUDGE GEORGE C. SMITH**
     **v.**                           **Magistrate Judge Deavers**

AMERICAN ELECTRIC SERVICE
CORPORATION, *et al.*,

        **Defendants.**

## OPINION AND ORDER

Plaintiff Vicki Hanson brings this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132. On January 13, 2017, both parties moved for judgment on the administrative record (Docs. 16 and 17). Responses have been filed and these motions are now ripe for review. For the reasons that follow, the Court **GRANTS IN PART** Plaintiff's Motion for Judgment on the Administrative Record and **DENIES** Defendant's Motion for Judgment on the Administrative Record.

## I.    BACKGROUND

Plaintiff Vicki Hanson was employed as a coal equipment operator for Defendant American Electric Power Services Corporation ("AEP"). She worked at AEP's Gavin plant, located in Cheshire, Ohio from 2009 through 2012. (Doc. 14, Administrative Record ("AR") at 0777). She was a participant in the long-term disability plan ("the Plan") offered by AEP. The Plan was administered by AEP and Prudential Insurance Company of America ("Prudential")

performed claims administration services for AEP's Plan.[1]

The relevant provisions of the Plan are set forth in the AEP Long-Term Disability Plan in the Administrative Record, pages 0079 through 0101.  Under the terms of the Plan, long-term disability benefits become available after a participant has been disabled for 1,040 hours of regularly scheduled work (this waiting period is called the "elimination period"), until 24 months following the date of disability, if the participant can establish that she had "an illness or injury that requires the regular treatment of a duly qualified physician that may reasonably be expected to prevent you from performing the material duties of your own occupation with AEP" (the own occupation standard).  (Doc. 14, AR 0082).  If the employee continues to be disabled after the first 24 months (the conclusion of the Plan's "own occupation" period), to continue receiving long-term disability benefits, the Plan requires the participant to establish that she had "an illness or injury that requires the regular treatment of a duly qualified physician and that may reasonably be expected to prevent you from performing the duties of any occupation for which you are reasonably qualified by your education, training and experience" (the any occupation standard).  (Doc. 14, AR 0082–83).

Pursuant to the Plan, it is Plaintiff's burden to provide proof of her disability.  (Doc. 14, AR 0092 ("When you apply for benefits, you must provide proof of your disability.")).  The Plan requires "satisfactory, written proof of objective medical information relating to [the applicant's] illness or injury which supports a functional impairment that renders [the applicant] to be disabled." (Doc. 14, AR 0089).

The Plan sets forth the rights and responsibilities of Prudential, as the claims

_____

[1] Defendants Prudential and The Bank of New York Mellon, NA were terminated effective August 19, 2016 pursuant to the Stipulations and Partial Voluntary Dismissal of the Parties.  (Doc. 9).

administrator responsible for determinations under the Plan's claims and appeals procedures, which include:

- Interpret, construe and administer the plan;

- Make determinations regarding . . . eligibility for benefits;

- Evaluate and determine the validity of benefit claims; and

- Resolve any and all claims and disputes regarding the rights and entitlements of individuals . . . to receive benefits and payments pursuant to the plan.

The decisions of the . . . claims administrator are final and binding.

(Doc. 14, AR 0098–99).

## A.     Plaintiff's Medical Conditions

Plaintiff suffers from neurological, orthopedic, rheumatological, and psychological illnesses, which include bulging discs, fibromyalgia, chronic progressive arthritis, pain from cervical disc dessication, lumbar disc bulging, reactive endplate change, carpal tunnel syndrome, memory loss, and depression.  (Doc. 14, AR 0172, 0179, 0448–55, 0478, 0501–03).  Plaintiff submitted her initial application for long-term disability benefits under the Plan on January 7, 2013, alleging that she was disabled beginning October 4, 2012.  (Doc. 14, AR 0064–66).  In support of her application, Plaintiff submitted medical records from her treating physicians. Plaintiff was treated by Dr. Clark, a podiatrist, for right foot pain beginning August 13, 2012. (Doc. 14, AR 0058-75).  On February 13, 2013, Plaintiff told AEP's Carol Wakeley that "her foot was hurting still and she had good and bad days."  (Doc. 14, AR 0042).  On February 22, 2013, Dr. Clark released Plaintiff to full duty work.  (Doc. 14, AR 0058).

On February 27, 2013, Plaintiff underwent a functional capacity evaluation conducted by

Physical Therapist Simon Hargus. (Doc. 14, AR 0004–17). Hargus noted that Plaintiff "reports bilateral foot pain was too sever[e] to work." (Doc. 14, AR 0005). Accordingly, he advised that she could not "return safely at a full duty capacity as a Coal Equipment Operator." (Doc. 14, AR 0017). On March 26, 2013, Prudential notified Plaintiff that benefits were approved through May 31, 2013. (Doc. 14, AR 0699–700; AR 0813–14). Thereafter, on May 16, 2013, Plaintiff consulted with Dr. Clark regarding work hardening with a goal of returning to work. (Doc. 14, AR 0701). On June 4, 2013, Dr. Clark prescribed 10–20 sessions of work hardening for Plaintiff. (Doc. 14, AR 0160). Vocational Rehabilitation Specialist Steve Lambert developed a vocational rehabilitation plan consisting of 10–20 sessions of work conditioning in preparation for a planned functional capacity evaluation. (Doc. 14, AR 0703–06; AR 0161–62). Plaintiff underwent physical therapy at Rocksprings Rehabilitation ("Rocksprings") for joint pain issues beginning June 13, 2013. (Doc. 14, AR 0102–04; AR 0181–217; AR 0219–20; AR 0227–72). In addition, Plaintiff saw Dr. Brar, her rheumatologist, from June 13, 2013 to July 1, 2013 for various musculoskeletal issues. (Doc. 14, AR 0174–79).

On August 2, 2013, Prudential authorized Rocksprings to conduct up to twenty additional sessions of work conditioning/hardening. (Doc. 14, AR 0710; AR 0819). Plaintiff completed these sessions by September 20, 2013, when she called Prudential to request that she be allowed to return to her job as a coal equipment operator. (Doc. 14, AR 0821). On September 26, 2013, Prudential notified Plaintiff that it had been notified that she was returning to work effective October 1, 2013, and therefore was terminating benefits. (Doc. 14, AR 0711–12). Plaintiff returned to full-time work on October 1, 2013, and except for a brief period of time missed during December 2013, remained in her role until February 24, 2014, when she again left work.

(Doc. 14, AR 0800).

**B.     Plaintiff's Disability Benefits – Own Occupation Standard**

In early 2014, Plaintiff underwent an electrodiagnostic study pursuant to which she was

diagnosed with carpal tunnel syndrome.  (Doc. 14, AR 0432).  On March 4, 2014, Nurse

Practitioner Phillips signed a Certificate of Disability/Attending Physician Statement noting that

Plaintiff was disabled due to fibromyalgia.  (Doc. 14, AR 0405).  On April 1, 2014 and April 16,

2014, Phillips again signed Certificates of Disability/Attending Physician Statements noting that

Plaintiff was disabled due to fibromyalgia, while also noting for the first time that Plaintiff

suffered from spondyloarthropathy[2] and anxiety/depression.  (Doc. 14, AR 0408; AR 0413).

Later, Dr. Brar signed a Certificate of Disability/Attending Physician Statement noting that

Plaintiff was disabled due to spondyloarthropathy.  (Doc. 14, AR 0418).  Plaintiff saw Phillips

from May 9, 2014 to May 30, 2014, complaining of fibromyalgia, anxiety and depression, and

spondyloarthropathy.  (Doc. 14, AR 0164–71).

On May 10, 2014, Plaintiff completed a Group Disability Insurance form, in which she

stated that fibromyalgia and spondyloarthropathy were preventing her from working.  (Doc. 14,

AR 0273–77).  Prudential then requested and obtained records from Dr. Brar and Phillips.  (Doc.

14, AR 0714; 0425–27; 0715–16).  On June 30, 2014, Prudential notified Plaintiff that she had

been determined to be disabled according to the Plan's "own occupation" criteria, effective

February 25, 2014, and benefits were paid accordingly.  (Doc. 14, AR 0717–18).[3]  Thereafter, on

---

[2] Spondyloarthropathy is a disease of the joints of the spine.  Dorland's Illustrated Medical
Dictionary 1779 (31st ed. 2007).

[3] In addition to these disability benefits, Plaintiff also applied for Social Security Disability
benefits with the assistance of Prudential and as required under the Plan.  She was awarded those benefits
on February 27, 2015, with an effective date of August 2014.  (Doc. 14, AR 85, 573–76).

July 7, 2014, in an effort to evaluate Plaintiff's ability to return to work and potentially make vocational services available to her, Kimberly Lewis, a vocational rehabilitation specialist, reviewed Plaintiff's file and conducted an employability assessment. (Doc. 14, AR 0790–91). She identified three occupations available to Plaintiff despite her limitations: administrative assistant; customer service representative; and personnel clerk and that they met the requirement that they pay at least 60% of Plaintiff's wage. (Doc. 14, AR 0791).

### C.     Plaintiff's Disability Benefits – Any Occupation Standard

On September 3, 2014, Prudential informed Plaintiff that the Plan required additional evidence in support of her long-term disability claim. (Doc. 14, AR 0721–22). It notified her that it would begin collecting information in anticipation of the change in disability definition pursuant to the "any occupation" standard. (Doc. 14, AR 0721–22; AR 0825). At that time, Plaintiff reported that she was doing some yoga, going for walks, and doing exercises at home. (Doc. 14, AR 0825).

Over the next two months, Prudential sent letters to Dr. Brar, Dr. Ulloa (an orthopedic surgeon), and Dr. Gutierrez (a neurologist), requesting that they provide all of Plaintiff's medical records and requesting the completion of capacity questionnaires. (Doc. 14, AR 0723–25). Soon thereafter, Dr. Ulloa faxed records regarding Plaintiff's carpal tunnel syndrome together with results from an x-ray of her cervical spine. (Doc. 14, AR 0471–83). Dr. Gutierrez faxed progress notes from Plaintiff's October 23, 2014 visit for dizziness and her November 19, 2014 visit for memory loss. (Doc. 14, AR 0500–09). And Dr. Brar updated his records with treatment notes chronicling Plaintiff's continued foot problems. (Doc. 14, AR 0510–11).

On October 30, 2014, Plaintiff called Prudential and reported that she was doing better

and was able to do some light activity at her house, and some light yard work and housework. (Doc. 14, AR 0827).  On December 8, 2014, after Plaintiff called to inform Prudential that she had been treating with a psychologist, Dr. Gleason, Prudential sent a letter to Dr. Gleason requesting Plaintiff's therapy visit notes and to complete a mental status examination form. (Doc. 14, AR 0827; AR 0726).  Prudential then requested that Plaintiff complete the Attending Physician Behavioral Health Statement Request.  (Doc. 14, AR 0727–28).  Dr. Gleason then faxed his November 18, 2014 and November 5, 2014 treatment notes.  (Doc. 14, AR 0523–29.)

As Plaintiff's initial period of benefits was nearing expiration, Prudential continued to request that Plaintiff's providers update her records.  On January 5, 2015, Phillips reported that Plaintiff's mood was better and that Plaintiff was in counseling.  (Doc. 14, AR 0299).  On January 28, 2015, Prudential requested that Phillips update her records.  (Doc. 14, AR 0729).  On January 29, 2015, Dr. Foster filled out a Mental Status Examination form, in which he wrote that he diagnosed Plaintiff with major depression and post-traumatic stress disorder, as determined from Plaintiff's initial visit with him.  (Doc. 14, AR 0221–26).  Dr. Foster indicated that Plaintiff had "no psychological restrictions."  (Doc. 14, AR 0225).  Because Plaintiff reported to Dr. Foster that "her disability is due to her physical health," Dr. Foster was not evaluating her ability to return to work at that time.  (*Id*.).

On February 23, 2015, Prudential requested that Phillips complete a capacity questionnaire.  (Doc. 14, AR 0732).  Phillips did so on February 25, 2015, stating that Plaintiff "most likely will not be able to return to full time work."  (Doc. 14, AR 0567–68).  Phillips further stated that Plaintiff did not have the work capacity for standing and walking, nor for sitting continuously up to 8 hours.  (*Id*.).  Phillips opined, however, that Plaintiff had the capacity

to frequently reach at desk level, frequently handle and finger with her right and left hands, and occasionally climb stairs and reach overhead. (Doc. 14, AR 0567).

On February 26, 2015, Registered Nurse Thomas McDow, a peer reviewer hired by Prudential to review Plaintiff's medical records, found that Plaintiff could work full-time with certain limitations, such as infrequent kneeling and squatting, and no crawling or climbing. (Doc. 14, AR 0799–801). McDow acknowledged Plaintiff's claims of a long-standing mood disorder, but noted that the "documentation does not demonstrate a severity of symptoms or impairment in cognitive function." (Doc. 14, AR 0800–01).

**D.      Termination of Plaintiff's Disability Benefits**

Prudential ultimately concluded that Plaintiff was not eligible for benefits under the "any occupation" standard and terminated her benefits effective February 27, 2015, although payment of benefits would be extended for another thirty days. (Doc. 14, AR 0737). Prudential also advised Plaintiff of her right to appeal its determination on her claim. (Doc. 14, AR 0737–38).

**E.      Plaintiff's First Appeal**

On April 16, 2015, Plaintiff's attorney served notice of her appeal to Prudential. (Doc. 14, AR 0578–79). Attached to the letter was additional evidence in support of her claim, including: "a brief statement provided by G.S. Brar, M.D.," "narrative reports provided by Thomas Foster, Ph. D.," and "a copy of the award notice directed to Ms. Hanson by the Social Security Administration." (*Id.*). On August 4, 2015, Plaintiff's attorney submitted to Prudential various additional medical records, including: an undated "Psychological Evaluation" completed by Dr. Fred Lee, a psychologist, after five sessions of evaluation on April 27, 2015, May 13, 2015, June 1, 2015, June 18, 2015, and June 30, 2015; a "Questionnaire as to Mental Residual

8

Functional Capacity" completed by Dr. Foster on April 21, 2015; a December 29, 2014 "Individualized Service Plan" completed at Worthington Center Management Company ("WCMC") (Dr. Foster's practice) and designed to "decrease symptoms of PTSD and anxiety disorder in order to improve overall functioning"; a December 29, 2014 "Initial Psychiatric Evaluation" completed at WCMC; a December 29, 2014 "Psychiatric/Pharmacological Management Plan" completed at WCMC; a December 29, 2014 "Adult Diagnostic Assessment" completed at WCMC; and a December 29, 2014 "Mental Status Exam" completed at WCMC. (Doc. 14, AR 0283–331).

Plaintiff's attorney alleged that her impairments were not fully evaluated and that "[o]nly the physical part of her claim was examined" during the first determination. (Doc. 14, AR 0284). Accordingly, Plaintiff's counsel requested that Prudential "review the report of Dr. Lee and the corresponding notes from her other providers" at this stage. (*Id.*). On August 7, 2015, Prudential sent a letter to Plaintiff's counsel stating that it intended to make a determination on Plaintiff's appeal by September 18, 2015 and requesting any additional information in support of Plaintiff's claim. (Doc. 14, AR 0740). However, Plaintiff's attorney did not provide any additional information. (Doc. 14, AR 0829).

As suggested by Plaintiff's attorney, Prudential had Barrington Psychiatric Center ("Barrington") review Plaintiff's file and opine as to necessary restrictions and/or limitations from any psychological conditions. (Doc. 14, AR 0741–43). Barrington referred Plaintiff's file to Raymond J. Friedman, M.D., Ph.D., QME, for review, who contacted Dr. Lee, but he declined to comment. (Doc. 14, AR 0614, 0621). In his report (Doc. 14, AR 0614–22), Dr. Friedman noted that although he was not provided with Dr. Lee's report, he did review the records from

Dr. Brar, Phillips, and Dr. Foster, and the SOAP notes of McDow.  (Doc. 14, AR 0615–19).  He concluded that "[t]here is insufficient medical documentation in [Plaintiff's] file to make a determination as to whether or not [Plaintiff] requires any medically necessary restrictions and/or limitations from any psychological condition from February 27, 2015 forward."  (Doc. 14, AR 0620).

Prudential's review of the evidence resulted in a finding that Plaintiff did not meet the Plan's definition of disability under the "any occupation" standard.  (Doc. 14, AR 0747).  Prudential's review was limited based on Plaintiff's appeal seeking consideration of the "behavioral health conditions and did not dispute [Prudential's] review of her physical limitations[, . . .] no review of the physical restrictions or limitations was completed on first reconsideration."  (Doc. 14, AR 0745).

## F.     Plaintiff's Second Appeal

In response to Prudential's denial, Plaintiff's attorney requested a second reconsideration.  (Doc. 14, AR 0626–27).  This time, Plaintiff's attorney specifically requested that her physical and mental conditions be evaluated.  (*Id*.).  On November 5, 2015, Plaintiff's counsel provided additional documentation in support of her claim.  (Doc. 14, AR 0337–96).  Again, Prudential requested additional records from Plaintiff's providers and conducted further evaluations of her records.  (Doc. 14, AR 0750–52, 0630–32).  Prudential requested Behavioral Medical Interventions ("BMI"), an independent medical review facility specializing in psychological conditions, conduct an independent review.  (Doc. 14, AR 0760–61).[4]

BMI provided Plaintiff's file to Glen Getz, Ph.D. (board-certified clinical

---

[4] BMI, however, was unable to obtain records from Dr. Lee.  (Doc. 14, AR 0648).  Accordingly, BMI completed the additional file reviews without this information.

neuropsychologist and licensed psychologist) and Bogdan Davidescu, M.D. (board-certified in physical medicine, rehabilitation, and pain medicine). (Doc. 14, AR 0657–72). Dr. Getz concluded "within a reasonable degree of clinical probability that the clinical evidence provided does not support functional impairment due to neuropsychological functioning" during that period. (Doc. 14, AR 0665). As for her symptoms of anxiety and depression, Dr. Getz stated that there was insufficient documentation of the symptom severity and continuity to evidence impairment. (Doc. 14, AR 0666).

Dr. Davidescu considered whether Plaintiff "is able to sustain full-time activities with certain restrictions and limitations in place" and concluded within a reasonable degree of clinical probability that Plaintiff does have physical limitations, meaning that she should avoid heavy lifting, pushing, pulling, and carrying, and limit her standing and walking. (Doc. 14, AR 0666). But Dr. Davidescu found that Plaintiff "would be able to perform full-time activities with the above restrictions and limitations in place." (*Id*.). As a result of Dr. Davidescu's findings concerning Plaintiff's physical limitations, Prudential asked that Lewis update Plaintiff's prior employability assessment. (Doc. 14, AR 0807). Taking into account Dr. Davidescu's limitations, Lewis concluded that the gainful occupations identified in that prior assessment "administrative assistant, customer service representative, and personnel clerk" were within these updated restrictions and limitations. (*Id*.).

On February 24, 2016, Prudential again denied Plaintiff's appeal. (Doc. 14, AR 0769–72). Prudential noted that it had reviewed the complete medical records in Plaintiff's file and agreed with the findings of Dr. Friedman, Dr. Getz, and Dr. Davidescu.. (Doc. 14, AR 0769). Plaintiff then initiated this lawsuit on July 5, 2016, in the Meigs County Court of Common Pleas

and it was removed to this Court on August 2, 2016.

## II.    STANDARD OF REVIEW

Plaintiff's claim for benefits is governed by ERISA, as amended, 29 U.S.C. § 1132.

Section 502(a)(1)(B) gives Plaintiff the right, as a participant of the Plan, to bring a civil action

"to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the

terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan."  29

U.S.C. § 1132 (a)(1)(B).  The Court reviews a challenge to a denial of ERISA plan benefits

under a *de novo* standard "unless the plan provides to the contrary."  *Metro. Life Ins. Co. v.

Glenn*, 554 U.S. 105, 111 (2008).  Under such circumstances where the "benefit plan gives the

administrator or fiduciary discretionary authority to determine eligibility for benefits or to

construe the terms of the plan," the more deferential "arbitrary and capricious" standard of

review applies. *McCartha v. Nat'l City Corp.*, 419 F.3d 437, 441 (6th Cir. 2005) (citing

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

Plaintiff argues that this matter should be reviewed *de novo*, where Defendant argues that

the Court should review under the arbitrary and capricious standard.

The Plan at issue in this case specifically states:

The plan administrator has the authority to control, administer and manage the
operation of the plan.  The rights to carry out responsibilities and use maximum
discretionary authority permitted by law are assigned to the plan administrator,
except to the extent described in this document as assigned to the claims
administrator.  These rights and responsibilities include the following:

•       Interpret, construe and administer the plan,

•       Make determinations regarding plan participation, enrollment and
        eligibility for benefits,

•       Evaluate and determine the validity of benefit claims, and

- Resolve any and all claims and disputes regarding the rights and entitlements of Individuals to participate in the plan and to receive benefits and payments pursuant to the plan.

(Doc. 14, AR 0098).

This Court has previously found that the aforementioned language sufficiently delegates discretionary authority to determine eligibility for benefits. *See Milam v. Am. Elec. Power Long Term Disability Plan*, No. 2:11-cv-77, 2012 U.S. Dist. LEXIS 135953 (S.D. Ohio Sept. 24, 2012) (Marbley, J.) ("the benefit plan gives the administrator discretion to determine eligibility for benefits or to construe the terms of the plan"). There is no question that Prudential made the final decision regarding Plaintiff's long-term disability benefits. Accordingly, the Court will apply the arbitrary and capricious standard to this case.

The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006). Under this standard, a court will uphold an administrator's decision if it is rational in light of the plan's provisions. *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003) (citation omitted). "[W]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." *Id.*; *see also Baker v. UMWA Health & Ret. Funds*, 924 F.2d 1140, 1144 (6th Cir. 1991) ("Applying the abuse of discretion standard in this context requires that the [administrator's] decision be upheld if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence."). The arbitrary and capricious standard, however, does not require a court to merely rubber stamp the administrator's decision; instead, a court "must exercise review powers." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004).

When conducting its review of a denial of benefits claim, the Court is generally "limited to consideration of the information actually considered by the administrator." *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 522 (6th Cir. 1998); *see also Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 457 (6th Cir. 2003). The Court is required to review the plan administrator's decision based on the administrative record and render findings of fact and conclusions of law accordingly. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). In reviewing the record and the administrator's determination, however, the Court will take into consideration the fact that a defendant is acting under a conflict of interest based on being both the decision-maker, who determines which claims are covered, and the payor of those claims. *Glenn*, 554 U.S. at 115–16; *Johnson v. Conn. Gen.'l Life Ins. Co.*, 324 F. App'x 459, 465 (6th Cir. 2009). The weight that a conflict of interest receives is determined by case-specific factors. *Glenn,* 554 U.S. at 116–17 ("[C]onflicts are but one factor among many that a reviewing judge must take into account."); *Johnson,* 324 F. App'x at 465–66.

## III.   DISCUSSION

Plaintiff Vicki Hanson argues that she was wrongfully denied long–term disability benefits by Prudential based on the following reasons: Defendants failed to provide a full and fair review of all of her medical conditions; Defendants ignored Plaintiff's physicians' and nurses' opinions; Defendants ignored the decision of the Social Security Administration; Defendants failed to consider the side-effects of Plaintiff's medications; Defendants never ordered an examination of Plaintiff; Defendants' vocational consultant's report and analysis was invalid; Prudential succumbed to its structural conflict of interest; Defendants ignored their own prior determinations of disability; and Plaintiff lost other benefits due to the denial of her long-

term disability benefits. Defendants assert that Prudential's decision denying Plaintiff's long-term disability benefits was not arbitrary and capricious because Plaintiff failed to provide objective evidence of her inability to perform any occupation as required by the Plan. The Court will discuss both parties' arguments in turn.

## A. Whether Plaintiff can Satisfy the Any Occupation Standard of the Plan

To continue receiving long-term disability benefits under the Plan, Plaintiff had the burden to establish that she had "an illness or injury that requires the regular treatment of a duly qualified physician and that may reasonably be expected to prevent [her] from performing the duties of any occupation for which [she is] reasonably qualified by [her] education, training, and experience." (Doc. 14, AR 0082–83). Defendant denied Plaintiff's application for long-term disability benefits because she did not provide sufficient documentation to satisfy the any occupation standard as required by the Plan. Specifically, Defendant references that the medical information provided by Plaintiff does not support her claim that she was unable to perform any occupation, not just her own occupation. (Doc. 14, AR 0737).

Over the course of Plaintiff's leave period, Plaintiff continued to supplement her medical records that have formed the foundation of the Administrative Record in this case. Plaintiff argues that Defendant failed to provide a full and fair review of her application and appeals and ignored her physicians and nurses opinions. Defendants, however, argue that Plaintiff cannot show that they acted arbitrarily and capriciously, but that she merely disagrees with Defendants' conclusions based on the medical records in this case.

### 1. Review of Plaintiff's physicians' and nurses' opinions

Plaintiff asserts that just one of her conditions is sufficient to find her disabled, but

15

considering all of her conditions together and the fact that none of them have improved, then the failure to consider the totality of her conditions rose to the level of arbitrary and capricious. Plaintiff relies on *Kalish v. Liberty Mut./Liberty Life Assur. Co. of Boston*, 419 F.3d 501 (6th Cir. 2005) and *Laser v. Provident Life & Accident Ins. Co.*, 211 F. Supp. 2d 645 (D. Md. 2002) to support her position as the plan administrators in these cases were faulted for failing to consider all of the plaintiff's medical evidence. Specifically, Plaintiff argues that Prudential ignored evidence in the administrative record, such as the opinions of her treating physicians and that ignoring evidence is proof that the Plan Administrator acted arbitrarily.

Plaintiff references the findings of each of her treating physicians in support of her argument that Prudential's decision was arbitrary and capricious. Dr. Brar, Plaintiff's rheumatologist, completed Prudential's Certificate of Disability form and concluded that Plaintiff suffered from long-term and chronic conditions, spondyloarthropathy, enthesopathy, degeneration at multiple levels of her cervical and lumbar spine, and erosive arthopathy of her right foot. (Doc. 14, AR 0418). Later, on March 16, 2015, Dr. Brar wrote to Prudential: "I have recommended that this patient pursues disability options, she be evaluated by a physician who specializes in occupational health assessments." (Doc. 14, AR 0580).

Another one of Plaintiff's treating professionals, Nurse Practitioner Phillips noted in an August 9, 2014 letter to AEP that Plaintiff's medical issues continued to persist or get worse, concluding:

> Needless to say, with these increasing symptoms, her decreasing abilities and uncertain prognosis for the future, Ms. Hanson is depressed and anxious. The depression, anxiety, and memory issues affect her ability to interact with people. She is increasingly anxious around people and crowds.
>
> It is my hope that this letter has in some way [helped] clarify Ms. Vicki Hanson's

current state of health and ability, or lack thereof, to return to her previous work duties.

(Doc. 14, AR 0457–59). Another nurse practitioner, Kristina Finlaw opined in an October 1, 2015 letter, that Plaintiff was unemployable as a result of her mental and physical illnesses. (Doc. 14, AR 0363).

Plaintiff's treating psychologist, Dr. Lee, confirmed many of Ms. Phillips statements in issuing his own opinion that Plaintiff was unable to function in a work situation due to significant cognitive deficits, post-traumatic stress disruptions, emotional deregulation, vulnerability to situational stress and suicidal ideation. (Doc. 14, AR 0362). Thomas Foster, a clinical psychologist, also opined that Plaintiff was incapable of functioning in a work environment. (Doc. 14, AR 0292–95, 0298, 0353).

Additionally, Michael Soroka, D.O. examined Plaintiff on October 2, 2015, and concluded that Plaintiff suffered from severe, debilitating fibromyalgia pain and dysfunction. He opined that Plaintiff's pain and need for medication prevented her from participating in gainful employment. (Doc. 14, AR 0378).

Defendants counter that they considered the combined effects of Plaintiff's illnesses. Defendants, however, specifically reference that Prudential did consider the effects of Plaintiff's fibromylagia, depression, right foot pain, and bilateral upper extremity pain when it granted her benefits under the own occupation standard. (Doc. 14, AR 0168). Then, during the next phase for evaluation under the any occupation standard and during the appeals process, Prudential referred Plaintiff's medical records for review. Dr. Davidescu considered all of the above conditions, as well as her history of seronegative spondyloarthropathy, right foot arthritis, bilateral lumbar spondylolysis, fibromyalgia, nonfocal neurological findings, and carpal tunnel

syndrome, which led him to conclude that Plaintiff was subject to occupational restrictions and limitations. Those limitations include: avoiding heavy lifting, pushing, pulling, and carrying, and no restrictions on sitting and occasionally requiring standing and walking. (Doc. 14, AR 0770–71). Considering all of Plaintiff's medical records as well as the opinions of independent professionals Dr. Friedman, Dr. Getz, and Dr. Davidescu, Prudential concluded that Plaintiff could still perform other occupations. (*Id.*). And the key factor in Prudential's decision making process was the vocation expert's opinion that Plaintiff could perform some occupations.

There is no question that Prudential's February 16, 2016 denial letter details everything Prudential considered in making its decision and it appears to be a well-reasoned decision. There is some concern that Dr. Lee declined to discuss Plaintiff's case with Prudential reviewers. However, Prudential seems to just dismiss Plaintiff's medical professionals conclusions in concluding that the records were "insufficient to provide medical rational and support for ongoing behavioral heath restrictions and limitations." (Doc. 14, AR 0769). Similarly, the physician reviewer opined that Plaintiff "would be able to perform full-time activities with the above restrictions and limitations in place." (Doc. 14, AR 0771). This Court has concluded "Defendant's emphasis on its own doctor's record review and its de-emphasis of the opinions of Plaintiff's treating physicians is a 'serious concern' that 'taken together with some degree of conflicting interests' can properly be the basis for setting aside an insurer's discretionary decision." *Holler v. Hartford Life & Accident Ins. Co.*, 737 F. Supp. 2d 883 (S.D. Ohio Aug. 27, 2010) (Black, J.) (quoting *Glenn*, 554 U.S. at 118). Although the Court is concerned that Plaintiff could have provided additional documentation to Prudential, including Dr. Lee's opinion, the major concern in Prudential's analysis of Plaintiff's medical records is the emphasis

on the opinions of their reviewing professionals and failure to acknowledge or distinguish the opinions of Plaintiff's treating medical professionals. Therefore, the analysis, or lack thereof, of Plaintiff's medical records was arbitrary and capricious. The Court will consider the additional arguments of the parties to determine what remedy is appropriate in this case.

### 2. Prudential's decision not to examine Plaintiff

Plaintiff essentially argues that Defendants' experts' opinions are not reliable because they made credibility judgments based on her medical records alone, without personally examining her. Prudential had the right to examine Plaintiff under the terms of the Plan but chose not to do so.

There is no question that when an issue of credibility of a claimant's subjectively-reported symptoms arises, the Plan must follow reasonable procedures in deciding that issue. The Sixth Circuit has held that "credibility determinations made without the benefit of a physical examination support a conclusion that the decision was arbitrary." *Helfman v. GE Grp. Life Assurance Co.*, 573 F.3d 383, 395–96 (6th Cir. 2009); *see also Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 296–97 (conclusion that a claimant had subjectively exaggerated her symptoms was "incredible on [its] face" when physician reaching that conclusion never examined the claimant).

In this case, Prudential could have performed a medical examination of Plaintiff, however, it argues that it had no obligation to do so. Defendants assert "[g]enerally, when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a

reasoned explanation, based upon the evidence, for the plan administrator's decision."
*McDonald,* 347 F.3d at 169.

The Sixth Circuit in *Bennett v. Kemper Nat'l Servs.*, 514 F.3d 547 (6th Cir. 2008) and *Calvert,* 409 F.3d 286, considered the defendants' decision to conduct only a file review when the plan at issue gave them the right to conduct a physical examination. Although "we find nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination," *Calvert*, 409 F.3d at 296, "a plan's decision to conduct a file-only review–'especially where the right to [conduct a physical examination] is specifically reserved in the plan–may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination.'" *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 621 (6th Cir. 2006) (alteration in original) (quoting *Calvert*, 409 F.3d at 295).

The Court finds that the doctors who reviewed Plaintiff's records on behalf of Prudential did not adequately explain why their conclusions were contrary to the opinions of Plaintiff's treating medical professionals and the social security administration's findings. Instead, Prudential's reviewers even acknowledge many of the conditions that Plaintiff suffers from and the limitations on her ability to work, but then conclusorily assert that Plaintiff can work based on the opinion of a vocation expert. The fact that Prudential chose not to conduct a physical examination of Plaintiff raises questions about the accuracy of its review process.

### 3.      Social Security Decision

Plaintiff argues that Prudential ignored the decision of the Social Security Administration in denying her long-term disability claim. Pursuant to the Plan, Plaintiff was required to apply for Social Security Disability benefits and she was ultimately awarded benefits of $854.00 per

month beginning August 2014.  (Doc. 14, AR 0085, 0573–76).  Plaintiff asserts that "Prudential barely mentioned [her] award of SSDI in its benefits termination letter.  Prudential essentially ignored Ms. Hanson's award of SSDI."  (Doc. 17, Pl.'s Mot. at 10–11).  Plaintiff argues that Prudential must carefully consider the Social Security Administration's determination of disability.  *Bennett v. Kemper Nat'l Servs. Inc., et al.*, 514 F.3d 547, 553–54 (6th Cir 2008).  Further, Plaintiff relying on *Holstrom v. Metropolitan Life Ins. Co.*, 615 F.3d 758, 777 (7th Cir. 2010), stated that the Social Security standard for total disability is more stringent than the "any occupation" disability standard.

The Sixth Circuit has held that "[a] determination that a person meets the Social Security Administration's uniform standards for disability benefits does not make her automatically entitled to benefits under an ERISA plan, since the plan's disability criteria may differ from the Social Security Administration's."  *Delisle v. Sun Life Assurance Co.*, 558 F.3d 440, 445–46 (6th Cir. 2009) (citing *Whitaker v. Hartford*, 404 F.3d 947, 949 (6th Cir. 2005).  Nonetheless, the Social Security Administration's decision "is far from meaningless."  *Calvert,* 409 F.3d at 294.  This Court has held that when reviewing a benefits denial, a court should give weight to the Social Security Administration's decision.  *Holler,* 737 F. Supp. 2d 890–91 ("When determining if a benefits decision is arbitrary, a court should give weight to the decision of the SSA.") (citing *DeLisle*, 558 F.3d at 445–46).  Although there is no technical requirement to explicitly distinguish a favorable Social Security determination in every case, the Sixth Circuit has raised concerns when a claims administrator assisted the plaintiff in obtaining Social Security disability benefits, but then determined without explanation that the plaintiff was not disabled under their plan.  The Court stated:

> [i]f the plan administrator (1) encourages the applicant to apply for Social
> Security disability payments; (2) financially benefits from the applicant's receipt
> of Social Security; and then (3) fails to explain why it is taking a position
> different from the SSA on the question of disability, the reviewing court should
> weigh this in favor of a finding that the decision was arbitrary and capricious.

*Bennett*, 514 F.3d at 554.

In this case, the Plan required Plaintiff to apply for Social Security Disability benefits and Prudential benefitted financially as it was able to recoup $5,900.03 based on Plaintiff receiving Social Security Disability benefits. The parties disagree on whether Prudential sufficiently explained how its decision differed from that of the Social Security Administration. Plaintiff asserts that Prudential barely mentioned the Social Security decision in its benefits termination letter. Defendants admit that Plaintiff was required to apply for Social Security Disability benefits and that Prudential benefitted from her award of benefits, however, they argue that the final factor and the basis for why their decision was not arbitrary and capricious is because Prudential received additional medical evidence after the Social Security administration decision and they explained why their decision differed. (Doc. 19, Defs.' Reply at 14; Doc. 14, AR 0747; 0772). Further, Defendants argue that this Court is not bound by the *Holmstrom* decision and that there are differences between the Social Security Disability program and ERISA benefit plans, including the burden of proof and special deference to treating physicians in Social Security disability applications.

Although Prudential references the Social Security decision in the letters to Plaintiff, they merely attempt to distinguish how Social Security disability benefits generally differ from the long-term disability benefits. Prudential further notes that their decision was based on two clinical specialists review of Plaintiff's file and "[i]t does not appear that the SSA had this

information when rendering their determination." (Doc. 14, AR 0772). However, the explanation provided by Prudential is more reliance on the conclusory findings of non-disability.

Defendants' failure to give any deference to the findings of the Social Security Administration decision is concerning, but alone does not require a finding that Prudential's denial of benefits was arbitrary and capricious. However, this is just one factor, along with the aforementioned, that have been weighed in finding Prudential's decision arbitrary and capricious.

## 4.    Other Considerations (Plaintiff's medications and Vocational Consultant's Report)

Plaintiff argues that she is required to take several medications (including Gabapentin for pain relief, Tizandine, a muscle relaxant, and Lexapro, an antidepressant) that make it impossible for her to work full-time and it was arbitrary and capricious for Prudential to ignore this fact in its review. (Doc. 17, Pl.'s Mot. at 11). Plaintiff, however, fails to offer any objective evidence in support of this argument. There is no reference to any statements by her treating physicians that Plaintiff's medications were impacting her ability to work. Dr. Getz, one doctor reviewing Plaintiff's records on behalf of Prudential noted that "there is no evidence that [Plaintiff] is demonstrating cognitive deficits from any medication(s)." (Doc. 14, AR 0669).

Plaintiff also argues that Defendants' reliance on the vocation consultant's analysis was invalid and that there is no medical support that Plaintiff can perform the jobs that the vocational expert claims that she can, an administrative assistant, a customer service representative, and personnel clerk. Plaintiff asserts that each of these jobs would require her to sit for long periods of time, perform repetitive motions, and work closely with people, all of which she claims her

treating doctors and nurses have opined that she cannot do.  (Doc. 17, Pl.'s Mot. at 12–13).

Plaintiff relies on *Grabowski v. Lincoln Nat'l Life Ins. Co.*, Case No. 1:10-cv-140,  2011 U.S.

Dist. LEXIS 89094 (W.D. Mich. Aug. 11, 2011), in support of her claim that Defendants' failure

to consider whether she met the requirements of the jobs identified by the vocational expert

constitute an arbitrary and capricious decision.

Defendants counter that their vocational rehabilitation specialist, Kim Lewis, relied on

Plaintiff's medical records from Plaintiff's own treating physician, Dr. Phillips, who completed a

capacity questionnaire on Plaintiff's abilities stating Plaintiff could frequently reach at desk

level, frequently handle and finger with her right and left hands, and occasionally climb stairs

and reach overhead.  (Doc. 14, AR 0658, 0567).  Dr. Davidescu, an independent reviewer, relied

on this questionnaire completed by Phillips in making his findings.  And Lewis was later asked

to review/update her earlier assessment of plaintiff and ultimately concluded that her earlier

employability assessment was unaffected.  (Doc. 14, AR 0807).

The Court is concerned, however, by the lack of evidence linking the medical evidence

and Plaintiff's position that she cannot work.  Prudential's own file reviewers acknowledged

Plaintiff's numerous medical conditions and limitations on her ability to work.  However, all of

their opinions seemed compounded on one another.  Prudential relied solely on those opinions

and that of their vocational consultant who concluded Plaintiff could perform the jobs of an

administrative assistant, a customer service representative, and personnel clerk.  Defendants,

however, have not discussed with sufficient detail Plaintiff's ability or inability to perform the

aforementioned occupations the occupational restrictions and limitations.

The Court ultimately finds that this is just another factor that weighs in favor of finding

Prudential's decision was arbitrary and capricious. The analysis was limited and not well-reasoned.

**B.      Defendants' prior determinations of disability and effect on other benefits**

Plaintiff argues that she received $5,900.03 in short-term disability benefits from AEP and long-term disability benefits from Prudential for two years. (Doc. 14, AR 0572, 0823–24). Plaintiff argues that without evidence of a significant improvement in her medical condition, Defendants' denial of long-term disability benefits is arbitrary and capricious because it is inconsistent with their prior determinations. Plaintiff relies on *Patel v. United of Omaha*, Case No. PWG-12-880, 2013 U.S. Dist. LEXIS 7767 (D. Md. 2013) in support of this argument. In *Patel*, the plan at issue only required the plaintiff satisfy an own occupation standard. Therefore, because the defendant found plaintiff disabled on four previous occasions, but disagreed with the conclusion on the fifth review, with no substantial evidence that the plaintiff's condition had improved, the court found that determination arbitrary and capricious. *Id.* at *20–23.

However, in this case, Defendants argue, and the Court agrees, that the Plan at issue requires the Plan participant to meet two different standards of disability, the "own occupation" standard within the first 24 months, and after the initial benefits period, the "any occupation" standard. (Doc. 14, AR 0082–83). Therefore, because of the two different standards required by the Plan, the fact that Defendants final determination in this case differed from its prior determinations does not weigh in favor of a finding that the denial of benefits was arbitrary and capricious.

Plaintiff additionally argues that Defendants' "unreasonable termination of [her] long-term disability benefits prevented her from continuing to receive other valuable employer-

sponsored benefits" such as health insurance, life insurance, and vision and dental benefits. (Doc. 17, Pl.'s Mot. at 15). However, because the Court has already found that Prudential's decision to terminate Plaintiff's long-term disability benefits was arbitrary or capricious, there is no need to consider additional allegations of damages suffered by Plaintiff.

## C.      Remedy

Having found that Prudential's decision denying Plaintiff's long-term disability benefits under the Plan was arbitrary and capricious, the Court must now consider whether to award benefits to Plaintiff or remand this matter to the Plan Administrator for further consideration. The Sixth Circuit in *Elliott*, 473 F.3d at 622, discussed the proper remedy in ERISA cases and adopted the reasoning of the First Circuit in *Buffonge v. Prudential Ins. Co. of Am.*, 426 F.3d 20, 31 (1st Cir. 2005), where the "problem is with the integrity of [the plan's] decision-making process," rather than "that [a claimant] was denied benefits to which he was clearly entitled," the appropriate remedy is to remand to the plan administrator.

In this case, the Court cannot find that Plaintiff is clearly entitled to benefits. However, there are issues that Defendants should have considered and need to consider in reassessing Plaintiff's claim for long-term disability benefits. Plaintiff's condition as a whole should be fully considered and Defendants are strongly encouraged to have Plaintiff examined by one of their medical professionals. The findings of the Social Security Administration should be given more weight. Further, Defendants should evaluate how the restrictions and limitations suggested by their file reviewers and Plaintiff's treating physicians would affect her ability to work in the suggested jobs: administrative assistant, customer service representative, and personnel clerk.

Therefore, the Court finds that this case should be remanded to the Claims Administrator

for further review and determination of whether Plaintiff is entitled to long-term disability benefits.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Plaintiff's Motion for Judgment on the Administrative Record  (Doc. 17) and **DENIES** Defendant's Motion for Judgment on the Administrative Record  (Doc. 16).

The Clerk shall remove Documents 16 and 17 from the Court's pending motions list.

The Clerk is instructed to close this case and remand it to Prudential, the Claims Administrator, to conduct a full and fair review of Plaintiff's claim for long term disability benefits consistent with this decision.

**IT IS SO ORDERED.**

*s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**